CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
AUG. 8, 2017
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CARL D. GRAY, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 6:16-CV-9 |
| NANCY A. BERRYHILL[1], Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Carl D. Gray ("Gray") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Gray alleges that the Administrative Law Judge ("ALJ") erred by failing to assign proper weight to the opinion of his treating physician and improperly assessing his credibility. I conclude that the ALJ's opinion is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Gray's Motion for Summary Judgment (Dkt. No. 14), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 16.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Gray failed to demonstrate that he was disabled under the

---

[1] Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit.

1

Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

This is Gray's second application for disability benefits. He initially claimed disability beginning July 30, 2006 in applications for SSI and DIB, but ALJ Thomas King found Gray not disabled on June 30, 2011. R. 24.

Gray protectively filed for the SSI and DIB applications at issue here on January 29, 2013, claiming that his disability began in 2006, but later amending his onset date to July 1, 2011, the day after ALJ King's unfavorable determination. R. 272–298, 37. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 122–154, 157–191. On August 3, 2015, ALJ William Barto held a hearing to consider Gray's disability claim. R. 34–69. Gray was represented by an attorney at the hearing, which included testimony from Gray and vocational expert Gerald Wells. Id.

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

On October 26, 2015, ALJ Barto entered his decision analyzing Gray's claim under the familiar five-step process,[3] and denying Gray's claim for disability. R. 16–28. The ALJ found that Gray suffered from the severe impairments of degenerative disc disease and chronic obstructive pulmonary disease ("COPD"). R. 18. The ALJ further found that Gray retained the RFC to perform a range of sedentary work in a climate-controlled environment involving tasks that can be completed in either a seated or standing position while remaining at the work station. R. 20. The ALJ found Gray could occasionally be exposed to dust, fumes and extreme temperatures. Id.

The ALJ determined that Gray could not return to his past relevant work as a crane operator (R. 26), but that Gray could work at jobs that exist in significant numbers in the national economy, such as assembler, final assembler and inspector. R. 27. Thus, the ALJ concluded that Gray was not eligible for DIB because he was not disabled through his date last insured ("DLI"), December 31, 2011. R. 28. In terms of SSI, the ALJ determined that on June 22, 2012, on Gray's fiftieth birthday, he became disabled pursuant to the Medical-Vocational Guidelines. R. 27. Consequently, the ALJ concluded that Gray became eligible for SSI as of June 22, 2012. R. 28.

Gray requested that the Appeals Council review the ALJ's decision, and on February 17, 2016, the Appeals Council denied Gray's request for review (R. 1–6). This appeal followed.

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## ANALYSIS

The relevant period in this action for Gray's DIB claim begins July 11, 2011, Gray's amended alleged onset date and the day after the prior unfavorable decision, through his DLI, December 31, 2011. See 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. 404.101. The relevant period for Gray's SSI claim is from his January 29, 2013 application date through the ALJ's decision on October 26, 2015. See 20 C.F.R. § 416.202 (explaining that a claimant is not eligible for SSI until, among other factors, the date he files an application for SSI benefits); 20 C.F.R. § 416.501 (stating that a claimant may not be paid SSI for any period that precedes the first month he satisfies the eligibility requirements, which cannot pre-date the date on which an application was filed).

### Treating Physician Opinion

Gray argues that the ALJ improperly determined that the opinions of his treating physician, Janice Luth, M.D., were entitled to little weight. The two opinions at issue are those from a December 17, 2013 appointment and from a June 15, 2015 appointment. Pl. Br. Summ. J., p. 15. Neither of these opinions was rendered during the relevant period for Gray's DIB claim.

Gray saw Dr. Luth on December 17, 2013 for a follow-up appointment for his back pain. R. 437. Dr. Luth determined that Gray suffered from COPD, had difficulty breathing, and suffered from back pain. Id. She assessed Gray with emphysema, low back pain, hypertension, hepatitis C, tobacco use disorder, and a history of pneumonia. R. 439. Dr. Luth concluded Gray had "significant limitations in stamina, ability to lift, ability to walk or sit for prolonged periods." R. 439.

On June 15, 2015, Gray saw Dr. Luth for another follow-up appointment, wherein he reported continuing pain in his lower back, but stated medication helped his symptoms. R. 669.

Dr. Luth refilled his mediation and completed disability paperwork. R 671, R. 665. In the disability paperwork, Dr. Luth found Gray could occasionally lift and/or carry 20 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk less than 2 hours in an 8-hour day, sit less than 2 hours in an 8-hour day, and must periodically alternate from sitting to standing to relieve pain. R. 665–666. Dr. Luth also determined Gray would need to lie down and rest for 4 hours out of an 8-hour day, was limited in handling, pushing and pulling with both upper and lower extremities and reaching in all directions, could never climb ramps/stairs/ladders/ropes/scaffolds, kneel, crouch, crawl or stoop. R. 666–667. Dr. Luth found Gray could occasionally balance, reach and handle, and frequently finger or feel. Id. Dr. Luth noted that "reaching or carrying, handling creates lumbar pain." R. 667. Finally, Dr. Luth determined such impairments would cause him to be absent from work more than three times a month and that his impairments had existed since July 30, 2006. R. 668.

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence. See 20 CFR § 404.1527(c). The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, No. 2:09-cv-1008, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by

medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citing Burch v. Apfel, 9 Fed. Appx. 255, 259 (4th Cir. 2001) (per curiam).

An ALJ is under no obligation to accept any medical opinion, but must explain the weight afforded to each opinion. See Monroe v. Colvin, 826 F.3d 176, 190–91 (4th Cir. 2016). If the ALJ provides a sufficient explanation, the court "must defer to the ALJ's assignments of weights unless they are not supported by substantial evidence." Dunn v. Colvin, 607 Fed. Appx. 264, 267 (4th Cir. 2015) (citing Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012)). However, if the ALJ does not adequately explain the weight given to each medical opinion, the court cannot meaningfully review the ALJ's decision, and remand is warranted. Monroe, 826 F.3d at 190.

The Fourth Circuit recently clarified the ALJ's duty to provide a sufficient explanation of the weight given to a medical opinion, stating that an ALJ must set forth a narrative discussion describing how the evidence in the record supports each of his conclusions, citing specific medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe, 826 F.3d at 189. The failure of an ALJ to specifically state what treatment history or evidence contradicts a particular medical opinion means "the analysis is incomplete and precludes meaningful review." Id. at 190. "Where a lack of specificity and analysis prohibits the district court from gleaning the evidence relied upon or the reasoning for weight afforded contradictory opinions, the district court cannot merely look to the record or conclusory statements within the opinion, but must remand the case so that the ALJ can

adequately explain if and how the evidence supports his RFC determination." Rucker v. Colvin, No. 715cv148, 2016 WL 5231824, at *4 (W.D. Va. Sept. 20, 2016) (citing Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2016)). Here, the ALJ provided a detailed explanation of the weight given to Dr. Luth's opinion, which allows for meaningful review and is supported by substantial evidence.

Dr. Luth first treated Gray on February 24, 2012, when he presented for an evaluation for arthritis in his right shoulder. R. 459–460. She saw him again in March 2012 (R. 454–457), April 2012 (R. 453), June 2012 (R. 450–451), August 2012 (R. 448–449), December 2012 (R. 446), December 2013 (R. 435–439), February 2014 (R. 433–434), March 2014 (R. 424–425, 429–430), July 2014 (R. 644–648), and June 2015 (R. 665–671). None of these appointments focused on manipulative limitations, and while they occurred during the relevant time frame for consideration of SSI, for which he was found disabled on his fiftieth birthday, these appointments are all outside of the relevant time frame for determining DIB. Id.

The ALJ assigned little weight to Dr. Luth's December 2013 opinion, stating: "This opinion is quite vague and conclusory, providing no explanation as to the claimant's specific functional limitations or the period to which this statement was intended to apply." R. 24–25. As to Dr. Luth's June 2015 opinion, the ALJ stated:

> The extreme limitations noted by Dr. Luth are inconsistent with the medical evidence of record, including her own treatment notes, which show minimal physical examination results but that the claimant was generally in no acute distress with normal posture and gait. (See e.g., Exs. B1F, p. 15 & B11F, p. 2.). This opinion also does not provide an explanation of the specific objective medical evidence to support these limitations. This doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported…there exists good reasons for questioning the reliability of the claimant's subjective complaints. The opinion is assigned only partial weight.

7

R. 25.

The ALJ sufficiently explained his decision to give Dr. Luth's opinion little weight, and such determination is supported by substantial evidence in the record. When Dr. Luth saw Gray in December 2013, she had not seen him for anything other than a medication refill since August 2012. Her notes from December 2013 showed that Gray had a negative straight leg-raising test, a normal posture and gait, normal chest and lungs, a normal cardiovascular system, and normal pulses with no extremity edema. R. 438. Gray also had no tenderness to palpation on his cervical spine with normal cervical spine movements. Id. Thus, it appears her opinion as to Gray's "significant limitations in stamina, ability to lift, ability to walk or sit for prolonged periods" stems more from his complaints of pain rather than her objective findings. In regards to Dr. Luth's June 2015 opinion, her notes indicate Gray had a normal chest and lungs, a normal cardiovascular system, but chronic lumbar pain. R. 670–671. She continued Gray on hydrocodone-acetaminophen, and Gray had reported his medication regimen was effective in controlling his symptoms. R. 429, 433. Dr. Luth's conclusions that Gray would effectively be unable to work because he would be absent more than three times per month and need to lie down for 4 hours out of an 8 hour day are not supported by the evidence of record.

Further, as to Dr. Luth's findings of Gray's manipulative limitations, the evidence of record does not support her conclusions. Gray cites to a consultative examiner's report from September 2007, which documented mild synovial thickening of some of the joints in his fingers (R. 476), a 2008 treatment note from Village Family Physicians that states Gray may have early Raynaud's phenomenon due to his reports of hand pain and swelling (R. 479), and Dr. Blanks diagnosis in March 2011 of osteoarthrosis in his hands in support of his limitations. R. 463. While these notes could support manipulative issues, there is no evidence Gray suffered from

8

abnormalities that would justify limitations in his RFC as to reaching and handling. Dr. Luth's treatment notes consistently indicate Gray did not have swelling in his extremities, and as his primary care physician, Dr. Luth never referred Gray to any treatment relating to his hands or arms. R. 438, 448–449, 451, 460, 670–671. Critically, when Dr. Luth referenced Gray's ability to reach, handle and finger, she specifically mentioned these movements were affected by his back pain, *not* issues with his extremities. R. 667. Records from Centra Bedford Memorial Hospital on April 2, 2015 indicate Gray denied wrist, arm or shoulder pain. R. 654–655.

Additionally, state agency physicians Robert McGuffin, M.D. and Gene Godwin, M.D. reviewed Gray's records and concluded that Gray did not have any reaching or handling limitations. R. 135, 151, 169. The ALJ acknowledged Gray's limitations when he restricted him to sedentary work with no more than occasional exposure to dusts, fumes and extreme temperatures, and substantial evidence supports the ALJ's conclusion to not include any reaching or handling limitations. R. 20.

The ALJ also analyzed opinions from William Humphries, M.D., Todd Delhi, M.D., Kathryn Humphreys, M.D., John Halpin, M.D., two state agency reviewing physicians, and the prior ALJ, Thomas King, when assessing Gray's RFC. R. 23–26. Gray makes no allegations of error as to the weight given these opinions. The ALJ gave limited weight to the opinions of Dr. Humphries, Dr. Delhi, Dr. Humphreys, Dr. Halpin and the two state agency physicians. <u>Id</u>. The opinions of Dr. Humphries, Dr. Delhi, and Dr. Humphreys were all given during a period in which Gray was adjudicated as able to work by ALJ King. R. 24. The ALJ afforded great weight to the prior opinion of ALJ King "in light of the fact that the evidence of record does not document significant changes in the claimant's conditions." R. 24.

Dr. Humphries determined Gray was limited to sitting and/or standing/walking for about 6 hours (each) during an 8-hour workday, lifting 25 pounds occasionally and 10 pounds frequently, occasional climbing, kneeling or crawling, and avoidance of heights, hazards and fumes. R. 477–478. The ALJ gave his opinion little weight because it "was rendered almost 4 years prior to the start of the current period at issue." R. 24. Dr. Humphreys and Dr. Delhi found Gray to be unemployable in treatment notes dated October 3, 2008 and June 11, 2009. R. 24, 465, 467. The ALJ gave their opinions little weight because the opinions were conclusory and "rendered during a period when the claimant has previously been adjudicated as able to work, and the record does not detail any significant changes in the claimant's conditions…" R. 24. Dr. Halpin found Gray was unable to perform any work activities in a treatment note dated May 30, 2012, but was capable of light or sedentary work in a note dated July 16, 2012. R. 24, 473, 567. The ALJ gave Dr. Halpin's opinions limited weight because "the claimant did not note significant symptoms related to his polycythemia during either of these visits [with Dr. Halpin]. He also did not allege any marked problems related to this condition during the disability hearing, and the record does not detail long-term treatment from Dr. Halpin." R. 24.

The ALJ also analyzed a May 2, 2011 form from Village Family Physicians, but was unable to determine the source because the signature was illegible. R. 25. Whoever completed the form determined that Gray was capable of sitting for 2-3 hours, standing for less than an hour during an 8-hour workday, never performing any of the listed postural activities, never lifting/carrying 50 pounds, only occasionally lifting/carrying 20 pounds, and frequently lifting/carrying less than 10 pounds. R. 25, 600–601. The source also estimated that Gray would likely be absent from work more than four days per month due to his impairments. R. 25, 601. The ALJ gave this opinion little weight due to "uncertainty as to its source, as well as the fact

10

that it is inconsistent with the medical evidence of record, including treatment notes that do not detail significant problems sitting on examination during the period at issue." R. 25.

Finally, the ALJ analyzed the opinions of state agency physicians Louis Perrott, Ph.D. and Dr. McGuffin dated September 25, 2013, who reviewed the evidence and determined that Gray was able to perform a range of light work. R. 132–135. Upon reconsideration, state agency physicians Eric Ott, Ph.D., and Dr. Godwin reviewed Gray's records and determined that he was capable of a range of light work involving occasionally lifting and/or carrying 20 pounds, standing and/or walking about 6 hours in an 8-hour workday, sitting about 6 hours in an 8-hour workday, frequently climbing ramps/stairs, balancing, stooping, kneeling, crouching and crawling, and occasionally climbing ladders/ropes/scaffolds. R. 166–170. The ALJ gave these opinions little weight, finding that they "are generally inconsistent with the current medical evidence of record, including treatment notes showing no significant changes in the claimant's conditions subsequent to ALJ King's previous decision finding that the claimant was limited to a range of sedentary work." R. 26.

Overall, the ALJ's assessment of the medical opinions in the record allows the court to meaningfully review the weight given to each opinion and the ALJ's ultimate conclusions. The ALJ gave specific weight to each opinion and provided additional explanation as to how that weight was assessed. The ALJ's explanation of the degree of weight assigned to the medical opinions includes the required "narrative discussion describing how the evidence supports each conclusion ...." Mascio, 780 F.3d at 636. Thus, the ALJ sufficiently explained his reasons for giving little weight to the opinion of Dr. Luth, and such reasons are supported by substantial evidence in the record.

11

**Credibility Assessment**

Gray asserts that the ALJ's credibility findings are not supported by substantial evidence.[4] Specifically, Gray argues that the "ALJ states that [Gray's] allegations are inconsistent with the ALJ's RFC findings but does not make specific findings as to how [Gray's] allegations are inconsistent." Pl. Br. Summ. J. p. 19.

Gray's subjective allegations of pain and limitations are not conclusive. Rather, under the two-step credibility analysis, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Gray met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ must then evaluate the intensity and persistence of the claimed symptoms and their effect upon Gray's ability to work. Id. at 594–95.

Here, the ALJ followed the required two step process, and determined first that there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce Gray's symptoms, such as pain. R. 21. See SSR 96–7p, at *1. The ALJ set

---

[4] In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements, and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16–3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16–3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16–3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16–3p was issued long after the ALJ's consideration of Gray's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96–7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016).

However, I note that the methodology required by both SSR 16–3p and SSR 96–7p are quite similar. Under either, the ALJ is required to consider Gray's report of his own symptoms against the backdrop of the entire case record; in SSR 96–7p, this resulted in a "credibility" analysis, in SSR 16–3p, this allows the adjudicator to evaluate "consistency."

forth Gray's subjective complaints about the intensity, persistence and limiting effects of his symptoms in detail in his opinion. R. 21. In step two, the ALJ concluded that Gray's statements concerning the intensity, persistence and limiting effects of his symptoms are partially credible. R. 21, 23. The ALJ determined that Gray's statements about his symptoms and limitations are not consistent with the objective medical evidence and other evidence in the record. R. 23. Specifically, the ALJ set forth Gray's medical treatment history in detail and noted that the degree of severity of Gray's alleged symptoms "lacks support and consistency with the other evidence of record," stating:

> He has not generally received the type of medical treatment one would expect for an individual with the claimant's reported subjective complaints, as his treatment has been relatively limited and conservative overall. He has been treated primarily with medications, which appear to have been relatively effective in controlling his symptoms. The claimant has not required surgical intervention, physical therapy, or any hospitalizations during the period at issue. Despite alleging significant functional limitations, repeated physical examinations have failed to consistently reveal abnormal gait or significantly decreased strength, sensation, or range of motion of any extremity, as would be expected with the degree of limitation alleged. The claimant has also described activities that are inconsistent with the functional limitations he has alleged. For example, an April 2012 physician treatment note states that he worked 'hauling scrape [sic] from time to time.' (Ex. B3F, p. 90). He reported during a July 2012 physician visit that he recently went on a long camping trip. (Ex. B3F, p. 69). Although the claimant has a history of COPD [chronic obstructive pulmonary disease], treatment notes do not show frequent reports to medical providers of breathing problems or any pulmonary function tests. Additionally, treatment notes indicate that the claimant was able to smoke cigarettes during the period at issue (See, e.g., B3F, p. 47), which supports a finding that the claimant would be able to work in an environment consistent with the respiratory limitations contained in the above residual functional capacity.

R. 23. The ALJ also noted that a "review of the claimant's work history shows that he worked only sporadically prior to the alleged disability onset date, which raises a question as to whether his continuing unemployment is completely due to medical impairments." Id. "Subsequent to 2003, the record only shows earnings constituting annual substantial gainful activity during

13

2006, with no earnings during 2007-2008 or 2010. (Ex. B8D)." Id. It is apparent from the decision that the ALJ reviewed with detail the medical record regarding Gray's impairments and measured his statements about the severity of his symptoms and limitations against the objective medical evidence. It is for the ALJ to determine the facts and resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). The ALJ's evaluation of Gray's symptoms is supported by substantial evidence, and the court will not disturb it.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** Gray's motion for summary judgment, and **DISMISSING** this case form the court's docket.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: August 7, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge